CRAIN, J.
lain this suit alleging defects in a residential construction, the plaintiffs appeal a summary judgment dismissing their claims against a limited liability company that provided plans for the construction, and a designer who is a member of the limited liability company. We affirm in part, reverse in part, and remand.
FACTS
The plaintiffs, Glenn and Sandra Wilson, filed this proceeding based upon alleged deficiencies in the design and construction of a new house.[1] The Wilsons sued several parties, including Acadiana Home Design, L.L.C. and Murry Daniels “d/b/a Acadiana Design,” alleging that those defendants prepared and provided the plans for the construction of the house. The Wilsons also allege that Acadiana Home Design and Daniels failed to properly supervise the construction of the house.
After filing an answer denying any liability, Acadiana Home Design and Daniels filed a motion for summary judgment that set forth several alternative grounds for dismissing the claims against them. Those grounds included the following: (1) Daniels cannot be held liable for the obligations of Acadiana Home Design, which is a limited liability company; (2) the claims against Acadiana Home Design are precluded by a limitation of liability provision contained on- the face of the plans (referred to hereinafter as the “disclaimer of liability”); (3) the claims against Acadiana Home Design have prescribed; and (4) the alleged defects in the construction of the house do not relate to or arise from the scope of services provided- by Acadiana Home Design.
|3The evidence submitted in support of the motion for. summary judgment established. that Acadiana Home Design is a limited liability company, and Daniels and his wife are the only members of the company. The Wilsons selected a stock plan from Acadiana Design that was then modified by Victor Sage, an employee of Acadi-ana Home Design, pursuant to instructions from the Wilsons^ The parties did not sign a written, contract, but, the evidence includes an invoice presented to the Wil-sons that details the charges and confirms periodic payments. The invoice appears under the title “Vic Sages” followed by “Acadiana Home Design, LLC.” Daniels did not personally participate in the project. He confirmed in his affidavit that he never met with the Wilsons, and neither he nor anyone else with Acadiana Home Design was involved in the actual construction of the house or the selection of the general contractor. Daniels further stated *108 in his deposition that all plans drafted by him since 1993 have been in his capacity as a member or employee of Acadiana Designs, and that all payments for plans go to Acadiana Design.
The Wilsons acknowledged in their depositions that they did not meet- Daniels until after filing the present suit; however, they contend that they have a claim against him individually because he was the “owner” of the plans, citing language on the face of the plans stating that .the plans “are the property of the designer Murry Daniels, Acadiana Design.”
The second ground for the motion for summary judgment relies upon the disclaimer of liability, which is located at the bottom of each page of the plans and provides: ■ .' [1]
THIS FIRM NOT BEING AN ARCHITECTURAL OR ENGINEERING FIRM STAMPS NO LIABILITY FOR STRUCTURAL OR ARCHITECTURAL DESIGN INTEGRITY. EVERY EFFORT HAS BEEN MADE TO INSURE ALL DIMENSIONS ARE CORRECT AND ENVIRONMENTAL REGULATIONS HAVE BEEN MET. IF AN ERROR OR |/MISSION DOES OCCUR, IT IS THE SOLE RESPONSIBILITY OF THE CONTRACTOR AND/OR THE OWNER TO CORRECT THE ERROR AND/OR OMISSION AT'HIS OWN EXPENSE AND NOT THE RESPONSIBILITY OF THE DRAFTING SERVICE.
This statement is located among numerous other statements, labels, and titles appearing in blocks at the bottom of each page of the plans. The parties did not sign or initial the statement, or any other part of the plans, and the statement is not emphasized or accentuated to distinguish it from the surrounding text.
With respect to the scope of the services to be performed by Acadiana Home Design, the invoice presented to the Wilsons reflects charges only for the purchase of the stock set of plans and the requested revisions to those plans. Daniels attested that neither he nor anyone else with Aca-diana Home Design was involved in the actual construction of the house or the selection of the general contractor. The Wilsons admitted in their depositions that they never had any contact with Acadiana Home Design during the construction of the house, and they never requested that any representative of the company visit the construction site.
At the conclusion of the hearing on the motion for summary judgment, the trial court found that the disclaimer of liability was binding because it was accepted by the Wilsons through their “utilization of the plans and payment to the defendants.” The trial court also found that Daniels and Acadiana Home Designs had not agreed to perform any supervision of the construction. The trial court granted summary judgment in favor of the movers on those grounds and signed a judgment to that effect, dismissing all claims against Daniels and Acadiana Home Design with prejudice. The judgment further stated that the trial court denied the motion for summary judgment insofar as the movers asserted that the claims were prescribed and that Daniels was shielded from personal liability as a member of Acadiana Home Design.
|fiThe Wilsons appealed the granting of the summary judgment, and Daniels and Acadiana Home Design answered the appeal. In their answer, Daniels and Acadia-na Home Design assert that if this court finds the trial court erred in granting summary judgment based on the disclaimer of liability and the scope of services provided by the movers, then, in that event, Daniels and Acadiana Home Design urge that the trial court erred in denying the motion on *109 the grounds of prescription and the statutory limitation of liability provided to Daniels as a member of a limited liability company. .
DISCUSSION
A motion for summary judgment shall be granted' only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. Code Civ. Pro. 'art, 966B(2). In determining whether summary .judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. In re Succession of Beard, 13-1717 (La.App. 1 Cir. 6/6/14), 147 So.3d 753, 759-60.
Disclaimer of Liability
Under some circumstances, a party may legally contract against liability for his own negligence or for a limitation on recoverable damages, but such an agreement must clearly indicate the intention of the parties. Rhodes v. Congregation of St Francis De Sales Roman Catholic Church, 476 So.2d 461, 463 (La.App. 1 Cir.1985). As long as one’s negligence does not cause physical injury to another, contractual provisions are valid to eliminate or limit liability for losses due to negligence, but not for losses caused by intentional acts or gross fault. | See La. Civ. Code art. 2004; Banner Chevrolet v. Wells Fargo Guard Services, 508 So.2d 966, 967 (La.App. 4 Cir.1987).
The Wilsons assert that the trial court erred in granting summary judgment based on the disclaimer of liability, because they never consented to the provision. Absent that consent, according to the Wilsons, the limitation of liability is not a part of their agreement and, therefore, is not binding on them.
Consent to an agreement may be oral, written, or by action or inaction that under the circumstances is clearly indicative of consent. See La. Civ. Code art. 1927; Townsend v. Urie, 00-0730 (LaApp. 1 Cir. 5/11/01), 800 So.2d 11, 17, wñt denied, 01-1678 (La.9/21/01), 797 So.2d 674. When consent is 'not express, or when the law creates no presumption of consent, the factfinder must determiné whether the facts and circumstances of the case establish implied consent. ‘See Knecht v. Board of Trustees for State Colleges and Universities and Northwestern State University, 591 So.2d 690, 694 (La.1991); Authement v. Verges, 10-0173, 2010 WL 3533299 (La. App. 1 Cir. 9/13/10)..
Our courts ' have previously ■ enforced provisions that limited or eliminated á party’s liability for property damages caused by his negligence or good faith breach of a contract; however in each instance, the disclaimer or limitation of liability was contained in a written contract whereby the parties’ consent to the provision was expressly conveyed. See Elephant, Inc. v. Hartford Accident & Indemnity Co., 239 So.2d 692, 693, 695 (La.App. 1 Cir.1970); Wadick v. General Heating & Air Conditioning, LLC, 14-0187 (La.App. 4 Cir, 7/23/14), 145 So.3d 586, 589, writ, denied, 14-1913 (La.11/21/14), 160 So.3d 972; Banner Chevrolet, 508 So.2d at 966, 968.
■ In the present case,"the agreement between the-parties was'not reduced to writing. The. movers presented no evidence of express consent, either written or [ ^verbal, by the Wilsons to the disclaimer of liability. The'provision is not contained in a written contract signed by the Wilsons, nor is there any evidence that they verbally-agreed to the provision. The plans are *110 not signed by the Wilsons, and the plans are not. incorporated by reference into a written agreement. In the absence of such express consent, Daniels and Acadia-na Home Design must prove that some action or inaction by the Wilsons is clearly indicative of their consent to the disclaimer of liability. See La. Civ. Code art. 1927; Knecht, 591 So.2d at 694; Townsend, 800 So.2d at 17.
Daniels and Acadiana Home Design argue that the purchase and utilization of the plans by the Wilsons, without any objection to the disclaimer of liability appearing thereon, suffices to establish their .consent to the provision. The jurisprudence reflects that attempts to enforce disclaimers of liability under similar circumstances have been unsuccessful where the evidence failed to establish that the customer was made aware of the provision at the time of the transaction. See United States Fidelity & Guaranty Company v. Dixie Parking Service, Inc., 262 La. 45, 50, 262 So.2d 365, 366, (1972); Colgin v. Security Storage & Van Co., Inc., 208 La. 173, 180-81, 23 So.2d 36, 39 (1945); Guillot v. Kaplan Farmers Co-op, Inc., 352 So.2d 402, 406 (La.App. 3 Cir.1977); Bowes v. Fox-Stanley Photo Products, Inc., 379 So.2d 844, 846 (La.App. 4 Cir.1980); Lawes v. New Orleans Transfer Co., 11 La.App. 170, 172, 123 So. 144, 146 (La.App.Orleans 1929).
In United States Fidelity & Guaranty Company, a garage owner sought to avoid liability for property stolen from a parked vehicle by relying on a disclaimer that was printed on the back of a receipt given to the customer and also was displayed on a sign in the garage. United States Fidelity & Guaranty Company, 262 La. at 48-49, 262 So.2d at 365-66. Rejecting this contention, the supreme court stated; “We do not have before us a serious contention that the liability of the | ¿defendant] has been limited because there is no evidence that the [customer’s] attention was directed to any attempted limitation of liability by defendant’s employee.” United States Fidelity & Guaranty Company, 262 La. at 50, 262 So.2d at 366 (footnote omitted).
Similarly, in Colgin, the plaintiff sought recovery for the loss of property deposited with the defendant. Colgin, 208 La. at 176, 23 So.2d at 37. The defendant maintained that its liability was limited by a provision printed in small type on the face of the warehouse receipt that- was mailed to the plaintiff; Colgin, 208 La. at 177-78, 23 So.2d at 38-39. Finding in favor of the plaintiff, the supreme court held:
A contract is implied by law when the deposit is received. To modify the contract implied by law, the special provisions 1 must' be either a part of the original contract or contained in an amendatory contract. In order for the special provisions to" be effective, the assent of both parties is necessary. One of the parties, without the consent of the other, cannot modify the implied contract. There must be a meeting of the minds of the parties to effectuate the special contract.
The limiting clause was hot brought to the' attention of the depositor, and we are at a loss' to see how he could be charged with consenting to a limitation of defendant’s liability.
Colgin, 208 La. at 180-81, 23 So.2d at 39. See also Guillot, 352 So.2d at 405-06 (disclaimer on receipt given to customer was not binding because “there was not an adequate showing of assent ... to give effect ta the clause”); Bowes, 379 So.2d at 845-46 (disclaimer on receipt given to customer was not binding where no evidence was introduced that “indieate[s] that the limitation of liability was explained or brought. to [the customer’s] attention”); Lawes, 11 La.App. at 171-73, 172, 123 So. at 145-46 (limitation, of liability on slip of *111 paper given to passenger who checked her luggage was not binding, because the passenger’s “assent to the limitation must be evidenced in some manner more convincing than the method shown to have been followed in the instant case”).
|9In the present case, Daniels and Acadiana Home Design did not introdúce any evidence that the disclaimer of liability was discussed or otherwise brought to the attention of the Wilsons prior to their purchase and use of the plans. Although the Wilsons acknowledge that they reviewed the plans shortly after they were prepared, the Wilsons deny noticing the disclaimer at that time, and claim they first learned of the provision when it was pointed out to them in their depositions. While the provision is located on the bottom of each page of the plans, the text is not emphasized to distinguish it from other information that also appears at the bottom of each page. To the contrary, the text of the disclaimer is smaller than the text of the other information. For example, the copyright information, which'also appears at the bottom of each page of the plans, is printed in larger text and is preceded by the phrase “IMPORTANT NOTE.”
Given the foregoing, we cannot hold, as a matter of law, that the Wilsons consented to the disclaimer of liability. To be entitled to a summary judgment on this basis, the movers had to establish, as an uneontested fact, that some action or inaction by the Wilsons was “clearly indicative of [their] consent” to the disclaimer. See La. Civ. Code art. 1927. The purchase and use of the plans by the Wilsons is indicative of their consent to the disclaimer only if they had knowledge, either actual or constructive, of the provision at that time. See United States Fidelity & Guaranty Company, 262 La. at 50, 262 So.2d at 366; Colgin, 208 La. at 180-81, 23 So.2d at 39; Guillot, 352 So.2d at 406; Bowes, 379 So.2d at 846; Lawes, 11-La.App. at 172, 123 So. at 146. The evidence of actual knowledge by the Wilsons is - conflicting, and the Wilsons swore in their affidavits that they did not see the provision when they purchased and used the plans.
As to constructive knowledge, we cannot conclude, as a matter of law, that the disclaimer was sufficiently displayed so as to impose-constructive knowledge 11ftof the provision on the Wilsons. Reasonable persons could disagree as to whether the disclaimer was sufficient to notify the Wilsons of the release set forth therein; therefore, their knowledge of the provision, if any, is a contested issue of material fact. See La. Code Civ. Pro. art. 966B(2); Hines v, Garrett, 04-080 6 (La.6/25/04), 876 So.2d 764, 765 (“[a] genuine issue is one as to which reasonable persons could disagree”). That determination must be reserved for the factfinder. As expressed by the court in Lawes:
[T]he question whether the party receiving such a receipt [containing a disclaimer] accepted it with notice of its' contents, Or with notice that it contained the terms of a special contract, so as to require him to acquaint himself with its contents is one of evidence to be determined by the jury.
Lawes, 11 La,App. at 172, 123 So. at 146. See also Read v. Willwoods Community, 14-1475 (La.3/17/15), 165 So.3d 883, 888 (the existence or nonexistence of a contract is a question of fact); Lozier v. Security Transfer and Investment Corp., 96-2690 (La.App. 4 Or. 4/30/97), 694 So.2d 497, 501 (whether party accepted the terms of a purchase order by performing the contract could not properly be decided in a motion for summary judgment because of genuine issues of material fact). The. trial court erred in granting summary judgment on this basis.[2]
*112 Scope of Services
We next consider whether the trial court erred in summarily dismissing the Wilsons’ claims alleging that Daniels and Acadiana Home Design negligently failed to supervise the construction of the house. The trial court found, that those claims fell outside of the “scope of services” undertaken by Acadiana Home Design and Daniels because the parties “did not contract for that.”
|nThe Wilsons argue at length that Aca-diana Home Design and Daniels, although admittedly • not architects, nevertheless performed the services of architects and, therefore, became obligated to supervise the construction. The Wilsons submitted information from the website of Acadiana Home Design stating that the company provides “the best in country french (sic) architecture.” The Wilsons acknowledged in then’ deposition that they did not look at the website during the design phase of the construction, and they did not testify that anyone at Acadiana Home Design ever claimed to be an architect. More importantly, however, the Wilsons do not articulate how this purported issue of fact is material to their claim for negligent supervision of construction.
The Wilsons offered no evidence that Acadiana Home Design or Daniels, regardless of their occupational status, ever agreed to supervise the construction of the house. The invoice presented to the Wil-sons reflects charges only for the purchase of a stock set of plans and revisions to those plans. Daniels attested that neither he nor anyone else with Acadiana Home Design was involved in the actual construction of the house or the selection of the general contractor. The Wilsons admitted in their depositions that they never had any contact with Acadiana Home- Design during the construction of the house, and they never requested that any representative of the company visit the construction site.
A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Hines, 876 So.2d at 765. Regardless of whether Acadiana Home Design and Daniels acted as purported architects, the Wilsons offered no evidence that Acadiana Home Design and Daniels ever agreed, in any capacity, to supervise the construction of the house. For this reason, the trial court did not err in granting summary judgment dismissing the claims against Acadiana Home Design and Daniels asserting 112negligent supervision of the construction. See Hohensee v. Turner, 14-0796, 2015 WL 1844385 (La.App. 4 Cir. 4/22/15), — So.3d- (affirming summary judgment dismissing claims against architects for alleged construction defects where architects were not hired to perform any tasks related to construction of the house).
For these same reasons, we affirm the trial court’s granting of summary judg-r ment on the “ ‘scope of services’ as it applies .to the driveway.” The plans do not include any information related to the driveway, other than generally depicting its location, and the record contains no evidence of any agreement by the movers to supervise the construction of the driveway.
Finally, with respect to the scope of services issue, the trial court granted summary judgment on “the defense of ‘scope' *113 of services’ as it applies to the balcony regarding a change in the design.” That particular judgment was rendered in response to the argument by Acadiana Home Design and Daniels that they should not be liable for any defects in the design of the balcony, because the Wilsons “had the balcony redesigned by an engineer to remove a column.”
The only evidence of the modification is the testimony of Mr. Wilson, who stated that an engineer prepared and stamped a drawing that removed a support column that obstructed the view from the rear of the first floor. Mr. Wilson no longer had the drawing, which he said just depicted the size of the cross-beam that -could be used in lieu of the column. , .
Given the limited nature of this evidence, we cannot conclude, as a matter of law, that the modification to the balcony design removed the design of the entire balcony from the scope of the services provided by Acadiana Home Designs. The extent of the modification of the balcony design is a contested issue of material fact that precludes summary judgment on that basis. The trial court erred in | ^granting summary judgment on that basis and dismissing any claims associated with the design of the balcony.
Answer to Appeal
We next; consider the answer to the appeal filed on behalf of Acadiana Home Design and Daniels. The summary judgment signed by the trial court included orders that specifically denied the motion for summary judgment to the extent it asserted prescription and the statutory limitation of liability provided to Daniels as a member of a limited liability company. In their answer to the Wilsons’ appeal, Acadiana Home Design and Daniels request a review of those orders and-urge that the trial court erred in denying the motion for summary judgment on those grounds. The Wilsons argue that the denial of a motion for summary judgment is an interlocutory order and therefore not reviewable on appeal.
The Wilsons filed an unrestricted appeal of the summary judgment that dismissed all claims against Acadiana Home Designs and Daniels. That judgment is a final, appealable judgment. See La.Code Civ. Pro. arts, 968, 1915A(1) and A(3); Motorola, Inc. v. Associated Indemnity Corporation, 02-0716 (La.App. 1 Cir. 4/30/03), 867 So.2d 715, 721. When an unrestricted appeal is taken from a final judgment, the appellee may seek review of all adverse interlocutory rulings by filing an answer to the appeal. See La. Code Civ. Pro. art. 2133; Bridges v. Mosaic Global Holdings, Inc., 08-0113 (La.App. 1 Cir. 10/24/08), 23 So.3d 305, 309 n. 5, writ denied, 08-2783 (La.2/20/09), 1 So.3d 496; Kyles v. Sylvester, 94-1367 (La.App. 3 Cir. 4/5/95), 654 So.2d 380, 382, writ denied, 95-1552 (La.9/29/95), 660 So.2d 875. Thus, Acadiana Home Design and Daniels may seek review of the denial of their motion for summary judgment, on the alternative grounds set forth therein.[3]
| uLimitation of Liability for Member of a Limited Liability Company
The parties do not dispute that Acadiana Home Design is a limited liability company and that Daniels is a member of the corn- *114 pany. The invoice for the plans, which the Wilsons paid, was from “Acadiana Home Design, LLC,” and the Wilsons acknowledged that they never met with Daniels during the: preparation of the plans and, in fact, saw him for the first time at depositions taken in this proceeding. Nevertheless, they argue that Daniels bears personal liability for any defects in the plans “as a member of Acadiana Home Design, L.L.C. and as owner of the home plans.”
The law considers a limited liability company and its members as being wholly separate persons. See La. Civ. Code art. 24; Ogea v. Merritt, 13-1085 (La.12/10/13), 130 So.3d 888, 894-95. Subject to certain statutory exceptions, no member, manager, employee, or agent of a •limited liability company is liable in such capacity for a debt, obligation, or liability ’of the limited liability company. See La. R.S. 12.1320B.
In allowing for limited liability companies, the legislature clearly intended to promote business in the state by limiting personal liability for some debts incurred or acts performed on behalf of business entities. Nunez v. Pinnacle Homes, L.L.C., 15-0087, 2015 WL 5972529 (La.10/14/15), 180 So.3d 285.- To that end, the legislature established narrowly defined circumstances under which individual members of a limited liability company may be subject to personal liability. Nunez, 180 So.3d at 288. Thus, the limited liability of a member is the general rule, whereas personal liability is an exception strictly framed by the law. See Nunez, 180 So.3d at 288.
iii-The “narrowly defined circumstances” in which a member of a limited liability company may be held personally liable are set forth in Louisiana Revised Statute 12:1320D, which provides:
Nothing in this .Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person; or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.
Under this provision, the limitation' of liability normally afforded a member of a limited liability company does not apply if the member (1) engages in fraud, (2) commits a negligent or wrongful act, or (3) breaches a professional duty. See Ogea, 130 So.3d at 897.
In their pursuit of Daniels' in his peisonal capacity, the Wilsons ostensibly seek to invoke the exceptions 'for a negligent or wrongful act and breach of professional duty, as their-petition contains no allegations of fraud.
When determining whether a member may be held personally liable for his negligent or wrongful act, the following four factors should be considered: (1) whether the member’s conduct could be fairly characterized as a traditionally recognized tort;' (2) "whether the member’s conduct could be fairly characterized as a crime, for which a natural person, not a juridical person, cóuld be held culpable; (3) whether the conduct at issue was required by, or was in furtherance of, a contract between the claimant and the limited liability company; and (4) whether the conduct at issue was done outside the member’s capacity as a member. Ogea, 130 So.3d at 900-01.
 To impose personal liability. on a member under the “tort” exception, the *115 member must owe a duty to the plaintiff that does not arise under the contract between the plaintiff and the limited liability company. See Nunez, 180 So.3d at 290. A showing of poor workmanship arising out of a contract entered into by the limited liability company, in and of itself, is insufficient to establish a “negligent or wrongful act” arising under Subsection 12:1320D. Nunez, 180 So.3d at 290; Ogea, 130 So.3d at 905-06. The existence, of a duty is a question of law. Ogea, 130 So.3d at 905.
Evidence of Daniels’ ownership of the plans, alone, is insufficient to establish a separate tort duty sufficient to engage his personal liability, where the obligation to provide adequate plans arose from the agreement by and between the Wilsons and Acadiana Home Design. See Nunez, 180 So.3d at 290 (obligation of member to check elevation of a house arose from construction contract with limited liability company, so breach of that obligation did not render member personally liable); Ogea, 130 So.3d at 905 (member who operated a bulldozer and supervised pouring of concrete was acting in furtherance of contract with limited liability company and did not owe separate tort duty to the plaintiff). There is no showing that Daniels owed a duty to the Wilsons that arose outside of the obligations of the agreement between the Wilsons and Acadiana Home Design.
The Wilsons do not contend that Daniels committed a crime, so we move to the third and fourth factors: whether the conduct was required by, or was in furtherance of, the contract with Acadiana Home Design, and whether Daniels acted outside of his capacity as a member of Acadiana Home Design. To the extent Daniels was involved in the preparation of the plans, his actions were in furtherance of the agreement between Acadiana Home Design and the Wilsons. Daniels testified in his deposition that all plans drafted by him since 1993 have been in his capacity as a member or employee of Acadiana Home Design, and that all payments for plans go to Acadiana Home Design. The Wilsons do not point to any contrary evidence indicating that Wilson acted outside of his capacity as a |17member of the Acadiana Home Design. Neither of these factors supports imposing personal liability on Daniels.
For all of the above reasons and based upon the undisputed facts, the “negligent or wrongful act” exception to the protection from personal liability does not apply in this case.
The final exception under Subsection 12:1320D applies to the breach of a professional duty. In this context, the word “professional” means one who is engaged in a profession identified in Title 12 of the Louisiana Revised Statutes. See Nunez, 180 So.3d at 289-90. According to his affidavit, Daniels is a “residential plan designer,” and Acadiana Home Design is a “plan service that sells residential plans that generally show the Took’ of the home, the layout and size of the rooms.” This occupation is not listed as a profession in Title 12.
The Wilsons argue, with little supporting evidence, that Daniels held himself out as an architect, and the practice of architecture is among the professional corporations identified in Title 12. See La. R.S. 12:1086, et seq. Nevertheless, it remains an undisputed fact that Daniels is not an architect and, therefore, is not a “professional” as that term is used in Subsection 12:1320D. See Nunez, 180 So.3d at 289-90. The result would be no different if a party falsely claimed to be an attorney or medical doctor, both of which are also recognized as professions in Title 12. See La. R.S. 12:801, et seq. and 12:901, et seq. While- such misrepresentations might give *116 rise to causes of action on other- grounds, they do not elevate the claimant to the legal status of a professional. Based upon the undisputed facts, the exception for the breach of a professional duty is not applicable in this case.
Accordingly, we find that Daniels, as a member of Acadiana Home Design, has no personal liability for the alleged deficiencies in the plans] See La. R.S. [1S12:1320B; Nunez, 180 So.3d at 289-90. On this basis, we grant summary judgment in his favor, dismissing the claims against him with prejudice.
Liberative Prescription
Finally, we consider the contention by Acadiana Home Design that the claims against it have prescribed. In light of our previous findings and conclusions, the only claims that remain pending against Acadi-ana Home Design are the allegations that it failed to properly design certain aspects of the house and failed to specify certain building materials. Acadiana Home Design argues that those claims are based in tort and,, therefore, are subject to the one-year prescriptive period for delictual actions set forth in Louisiana Civil Code article 3492. See also La. Code Civ. Pro art. 3493 (applicable to claims for damage to immovable property). The Wilsons filed the present suit on January 7, 2013. Citing Mr. Wilsons’ discovery of leaks in the structure prior to June 2011, Acadiana Home Design asserts that the Wilsons’ claims against it have prescribed.
The Wilsons counter, in pertinent part, that their claims against Acadiana Home Design are based upon, a contract for the preparation of home plans. As such, according to the Wilsons, the claims are based in contract and are subject to a ten-year prescriptive period.
Our courts have long recognized that when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions. See Bunge Corporation v. GATX Corporation, 557 So.2d 1376, 1385 (La. 1990); Federal Insurance Company v. Insurance Company of North America, 262 La. 509, 512, 263 So.2d 871, 872 (1972); Illinois Cent. R. Co. v. New Orleans Terminal Co., 143 La. 467, 473, 78 So. 738, 740 (1918); Everett v. Philibert, 08-2270 (La.App. 1 Cir. 5/8/09), 13 So.3d 616, 620.
In such cases, the applicable prescriptive period is determined by the character that plaintiff gives his pleadings and the form' of his action. Bunge Corporation, 557 So.2d 1385; Federal Insurance Company, 262 La. at 512, 263 So.2d at 872; Insurance Storage Pool, Inc. v. Parish National Bank, 97-2757 (La.App. 1 Cir. 5/14/99), 732 So.2d 815, 818. If the action is purely one in tort, then it is prescribed by one year. If the action is predicated on a breach of the contract, then it is only prescribed by ten years. Johnson v. Kennedy, 235 La. 212, 225, 103 So.2d 93, 98 (1958); Lafleur v. Brown, 223 La. 976, 979, 67 So.2d 556, 557 (1953); American Heating & Plumbing Co., Inc. v. West End Country Club, 171 La. 482, 490-91, 131 So. 466, 469 (1930). See also La. Civ. Code arts. 3492, 3493, and 3494.
In reviewing the allegations of the petition in this context, we are mindful that pleading the theory of the case is rejected in- Louisiana, and recovery may be had under any legal theory justified by the facts pleaded in the petition. See Franklin v. Able Moving & Storage Company, Inc., 439 So.2d 489, 491 (La.App. 1 Cir. 1983). We also recognize that the rule that the allegations and the prayer of a petition govern the nature of the action asserted is not without limitation. The *117 courts are not obligated, to ascribe to an action the nature or character indicated by the prayer of the plaintiff’s petition -when the relief requested is unsupported by factual allegations establishing plaintiffs legal entitlement to the remedy sought. United Gas Pipe Line Company v. Cargill, Inc., 612 So.2d 783, 785-86 (La.App. 1 Cir.1992).
Finally, in determining whether a claim is based in tort or contract, this court has observed that the distinction between damages ex contractu and damages ex | an delicto is that the former ensue from the breach of a special obligation, and the latter from the violation of a general duty. Aetna Life and Casualty Company v. Dotson, 346 So.2d 762, 765 (La.App. 1 Cir.), writ denied, 349 So.2d 1272 (La.1977).
In Illinois Cent. R. Co., a railroad company entered a contract with another railroad company for the use of certain tracks. After two trains collided on the tracks, one of the companies filed suit against the other, alleging that the defendant’s dispatcher improperly ordered one of' the trains onto the tracks. Illinois Cent. R. Co., 143 La. at 469-72, 78 So. at 738-39. The defendant filed an exception of prescription urging that the claim was based in tort and was filed more than one year after the accident. Illinois Cent. R. Co., 143 La. at 472-73, 78 So. at 740. The supreme court affirmed the overruling of the exception of prescription, explaining:
There is no doubt that the action of the defendant, through its [employee] running this other train into that of the plaintiff, amounted to a tort; but there is no reason why the breach of a contract by means of a tort should not furnish ground for an action for breach of contract. A contractor cannot liberate himself from his contract, or, in other words, destroy its obligation, , by committing a tort; and if the obligation is not destroyed, but remains in full force, ■.and the contract is breached, there is evidently a.ground of action on the contract. Because a certain act of omission or commission violates the general duty which a person owes to society not to injure another is no reason why it should not, at the same time, violate a special duty owing to this other by virtue of a contract to do or not to do that particular thing, and why the violation of the letter duty, should not furnish a cause of action.
Illinois Cent. R. Co., 143 La. at 473, 78 So. at 740.
In United Gas Pipe Line Company, the plaintiff claimed that it was .forced to- relocate a pipeline because of soil subsidence resulting from the defendant’s mining operations. United Gas Pipe Line Company, 612 So.2d at 784-85. The plaintiffs petition asserted claims in both tort and breach of contract, alleging a stipulation pour autrui in a lease agreement between the defendant and the | ⅞1 landowner and that the defendant verbally agreed to reimburse the plaintiff the cost to relocate the pipeline. United Gas Pipe Line Company, 612 So.2d at 785. The defendant filed an exception of prescription, arguing that the tort claims had prescribed and that the ten year prescriptive period for breach of contract did not apply. United Gas Pipe Line Company, 612. So.2d at 785.
The trial court agreed with the defendant and maintained the exception, ,but this court reversed. After recognizing that the same acts or omissions may give rise to actions in tort and contract, this court held:
United’s petition sets forth ample factual allegations regarding the possible existence of a stipulation pour autrui in the lease contract and of an oral contract between the parties as well as the alleged breach of such obligations. United’s pleadings, supported by factual *118 allegations which suggest but do not determine its legal entitlement to the remedy sought, set forth an action in contract. Where the pleadings state a cause of action in contract the applicable prescriptive period is ten years.
United Gas Pipe Line Company, 612 So.2d at 786. See also American Heating & Plumbing Co., Inc., 171 La. 482, 490-91, 181 So. 466, 469 (claim for damages from explosion caused by alleged improper installation of a water heater was based in contract and subject- to ten year prescriptive period); Lafleur, 223 La. at 978-79, 67 So.2d at 557 (claim for crop damages resulting from alleged improper installation of a water pump was based in contract and subject to ten-year prescriptive period).
In the present suit, the Wilsons allege that Acadiana Home Design designed the house and prepared the subject plans for them. The Wilsons allege that Acadiana Home Désign failed to design the roof and other components of the home in a manner that diverts water away from the structure and prevents water intrusion. The Wilsons also allege that Acadiana Home Design failed to specify building materials that avoid or prevent water damage and intrusion. Acadiana Home Design acknowledges that it contracted with the Wilsons for the preparation |22of the plans, and the parties do not dispute that Acadia-na Home Design invoiced the Wilsons for the plans, and the Wilsons paid the invoice.
Given these uncontested facts, together with the allegations of the petition, we find that the Wilsons’ claims against Acadiana Home Design are based in contract. The Wilsons contracted with Acadiana Home Design for the preparation of the plans. The petition alleges that the defendant did not properly design certain features of the house and that these design deficiencies contributed to the water intrusion into the house. As in United Gas Pipe Line Company, these allegations are sufficient to set forth a cause of action in contract. We further note that the alleged damages flow from the breach of an obligation contracted by Acadiana Home Design, as opposed to a general duty owed by the design firm to all persons.
Accordingly, we hold that a ten-year prescriptive period applies to the Wilsons’ claims asserting that Acadiana Home Design failed to properly design the house. See Cameron v. Bruce, 42,873 (La.App. 2 Cir. 4/23/08), 981 So.2d 204, 207, writ denied, 08-1127 (La.9/19/08), 992 So.2d 940 (claim alleging that home inspector failed to exercise reasonable care and skill in an inspection was based in breach of contract and tort, and was subject to ten year prescriptive period). See also Federal Insurance Company, 262 La. at 514-16, 263 So.2d at 872-74 (claim that party negligently damaged equipment during a service call pursuant to a maintenance contract was based in contract and subject to ten-year prescriptive period); Motorola, Inc. v. Standard Materials, Inc., 337 So.2d 1214, 1215-16 (La.App. 1 Cir.1976) (claim that party failed to return goods entrusted in its care pursuant to a maintenance contract was based in contract and subject to' ten-year prescriptive period); Louisiana Alligator Wholesale, Inc. v. Prairie Cajun Seafood Wholesale Distributors, Inc., 07-1590 (La.App. 3 Cir. 4/30/08), 981 So.2d 929, 935 (claim asserting that meat spoiled because defendant negligently performed oral agreement to process the meat was subject to ten-year prescriptive period).[4]
*119 For these reasons, we find no merit to the motion for summary judgment insofar as it asserted that the claims of the Wil-sons against Acadiana Home Design have prescribed.
CONCLUSION
The summary judgment signed on March 11, 2015, is (1) reversed to the extent it dismissed the claims against Aca-diana Home Design and Daniels based on the disclaimer of liability, (2) reversed insofar as it dismissed the claims asserting negligent design of the balcony, and (3) affirmed insofar as it dismissed the claims against Acadiana Home Design and Daniels asserting negligent supervision of the construction of the house and driveway.
In response to the answer to the appeal, summary judgment is granted in favor of Daniels, as a member of Acadiana Home Designs, finding no personal liability for the alleged deficiencies in the plans, and those claims are dismissed with prejudice. The denial of the motion for summary judgment, is affirmed, finding no merit to the contention that the remaining claims of the Wilsons against Acadiana Home Design have prescribed.
Acadiana Home Design and Daniels also filed a motion to supplement their brief on appeal to include the transcript of the trial court’s oral reasons for | ^judgment. Because the record on appeal was supplemented to include the transcript, appellees’ motion is dismissed as moot. Costs of this appeal are assessed one half to Acadiana Home Design, LLC and one half to Glenn and Sandra Wilson. The case is remanded for further proceedings.
SUMMARY JUDGMENT AFFIRMED IN PART, REVERSED IN PART; DENIAL OF MOTION FOR SUMMARY JUDGMENT AFFIRMED IN PART, AND REVERSED AND GRANTED IN PART; MOTION TO SUPPLEMENT DISMISSED AS MOOT; CASE REMANDED.
HIGGINBOTHAM, J., concurs.

. A judgment dismissing the commercial general liability insurer of one of the builders of the house is the subject of a companion appeal decided this same date. See Wilson v. Two SD, LLC, 15-0477 (La.App. 1 Cir. 12/16/15), — So.3d -.

. Acadiana Design and Daniels also mention a provision in the invoice for the plans that *112 states, "The designer is not responsible for any expenses incurred to alter construction after the building permit is obtained.” The movers do not articulate how this language releases them from any liability for deficiencies in the plan, and we do not construe the language to constitute such a release.

. While the angwer to the appeal clearly permits this court to consider the merits of the alternative grounds asserted in the motion and rejected by the trial court, we do not hold that an answer is necessarily required in all instances for an appellate court to affirm a summary judgment on an alternative basis that, although rejected by the trial court, is contained in the motion and supports the judgment. See La.Code Civ. Pro. arts. 2133 and 966F(1).

. We recognize that in Elnaggar v. Fred H. Moran Construction Corporation, 468 So.2d 803, 810 (La.App. 1 Cir.1985), this court applied thewne-year prescriptive period for del-ictual actions to a claim against a home designer; however, the plaintiff in that case did *119 not have a contract with the home designer. Instead, the residence was built as a speculative venture and not specifically for the plaintiffs, who submitted an offer on the house in the final stages of construction. Elnaggar, 468 So.2d at 810. The only prescription issue before the court in Elnaggar was whether the claim was subject to the ten-year prescriptive period applicable to claims against architects or the one-year period generally applicable to delictual claims. See Elnaggar, 468 So.2d at 810; La. Civ.Code arts. 3492 (claims for damage to immovable property) and 3500 (claims against architects). The absence of a contract between the plaintiffs and the designer in Elnaggar distinguishes it from the present case. We also note that this court has previously held that the five-year peremptive period set forth in Louisiana Revised Statute 9:2772 applies to claims against home designers, but that statute is not determinative of the applicable prescriptive period. See La. R.S. 9:2772D; Burkart v. Williamson, 09-0294 (La. App. 1 Cir. 11/13/09), 29 So.3d 635, 638.